*130 The opinion of the court was delivered by
Huston, J.
William Barclay, who died in 1816, had, by his will, appointed his widow, Elizabeth Barclay, executrix, and Robert Anderson, Esq., executor of his last will. They proved the will, and letters testamentary were issued to them jointly.
They returned into the Register’s Office an inventory. William Barclay had kept a tavern, and the executor very unwisely re- , turned the amount of all the charges found in his tavern books from 1800 up to his death, without distinguishing between the sperate and desperate debts.
After the death of Robert Anderson, who died intestate, his administrators filed with the Register an account of his administration, as did the widow of her administration. The two accounts came before the Orphans’ Court on the same day. From the account of Robert Anderson’s administration of such part of the estate as came to his hands, as the same was passed by the Orphans’ Court, the widow appealed.
In this court, a preliminary point was made by her counsel; viz. it was insisted that Elizabeth Barclay, as surviving executrix, must settle the whole account, as well of what she administered as of what was done by Anderson, and that an account could not be received from the representatives of Anderson. It was also insisted, that settling an administration account is an act of administration, and that the administrators of an executor were not administrators of the first deceased, and could not do any act respecting his estate. Without disputing about the abstract meaning of words, the administrators of a man who was attorney in fact, and as such collected money, are not attorneys in fact of the principal, and yet they may settle the accounts between the deceased attorney, and his principal. The administrators of a deceased officer of government are not officers of government, and yet they may — nay, they must settle the accounts of the deceased, with, the government; and generally must settle every account, whether official, representative, or private, which their deceased left unsettled.
The proceedings, in the several courts of England, are so unlike any thing we have here, that it would be misspent time to trace them. It vvould seem, however, such settlements are not unknown there. Toller tells us, page 491, that accounts and payments of sums under forty shillings are generally allowed on the oath of the executor; and adds, after the death of an executor sums under forty shillings are not allowed on the oath of his representatives; for such payments can be substantiated only by him who made them. The representatives of an executor, may then •settle his account, though not so advantageously, in all cases, as he might have done while alive.
The administrators of an administrator were cited, and settled *131 an account with the administrator de bonis non, and were sued for the balance found due from their intestate, as administrators. Several exceptions were taken to the recovery; it escaped, however, the counsel and the court, that such account could not be settled in that way, and plaintiff recovered. Sloan v. Story’s Administrators, 6 Mass. R. 390. And, in our own court, Haine, brought suit against the administrator of Hubert, for money alleged to be due to the plaintiff from Hubert, as guardian of the plaintiff. The administrators offered in evidence, at the trial, an account of his guardianship kept by their intestate in his life, and their own oath. The late Chief Justice says, there would be no pretence for offering these in a Court of Common Pleas; the account not having been exhibited to the Orphans’ Court and settled there as it ought to have been. And Brackenridge, the only other judge in court, says, the only objection to it is, that it had not been offered to, and passed by the Orphans’ Court, in the first instance. Haine v. Hubert’s Administrators.
If the representatives of a deceased executor, may settle his account when he was sole executor, there are many reasons why they should do it, and why they should not permit the vouchers to pass out of their hands to a co-executor, who, of all men living, has the greatest interest to settle it so as to discharge himself, and charge the estate of the deceased executor. An inconvenience, it is said, may arise from admitting one party to settle a separate account. This is no objection, as the court, I believe, never permit it without having the other co-executor before them; and, in general, do not finally pass one account until the other is also brought before them. If the representatives of a deceased executor, choose to give their papers to a surviving executor, and he settles the whole estate, there can be no objection, ordinarily. If they will not give their books, papers, &c., the first section of the act of 1713, clearly gives authority to the Orphans’ Court to compel them to settle the account of what was administered by those deceased; “ Shall cause to come before them such who, as guardians, tutors, trustees, executors, administrators, or otherwise, are or shall be intrusted with, or any wise accountable for, any lands, fyc.”
Many exceptions were taken to items of the account, most of which were here abandoned. I shall notice only two or three. A receipt was produced dated some months before the death of William Barclay. Barclay was then collector of taxes, and the receipt was in 1815, from William Barclay on account of taxes and exempt fines, twenty dollars per Robert Anderson; this signed by the treasurer. We are of opinion that on the face of this receipt, it ought to be taken that Barclay, who lived more than twenty miles from Lancaster, sent this money by Anderson. ■ There was no other legal evidence on this point. This item should be struck out of the account.
Certain articles specified in the inventory were not in the ven *132 due paper. Some of these were admitted by the widow to have been kept by herself; some, viz. a cow, two chaff beds and bedsteads, and some cloth, &c. she denied having, and wished the amount to be charged to Anderson. There was not even an allegation that he took any of these articles into his own possession.
The tavern books of the deceased amounted to above six hundred dollars, only a little more than one hundred of these had been collected. The proof was, that the books were left with the widow. Her counsel alleged that Anderson was liable- for those goods, and for the balance of those accounts; no proof was given that any of them could have been collected, except what, are accounted for. Each executor has equal power over the goods .of the deceased; one cannot take them from another, nor recover them by any process at law. If one have the exclusive possession of goods, or of credits, the other is not liable for those articles, at least, not of course; for though it is settled, that if one executor contribute or assist in any way to enable the other to obtain'possession'of the assets, he shall be liable for them, yet if he is merely passive, and does not obstruct the other in obtaining or keeping the assets, he is not liable. This is the general rule; there may be cases of such gross conduct as would form exceptions.
By an act of assembly, either creditor or legatee may,, on application to the Orphans’ Court, compel an executor who is likely to waste the goods to give security; it does not mention that one executor may as executor compel the other to give security. Now, it is highly unreasonable that the legatees or creditors having power by express law to secure themselves, should lie by, and then ask indemnity from the other executor, who had less power to restrain, or prevent the evil than each of them had. We see no ground for charging Anderson’s estate with any thing on these accounts.
The estate was very small, and we have no evidence of any trouble or expense by Anderson which will justify the allowance of sixty dollars to him on this account. We reduce his allowance to forty dollars, and, with these alterations, the account is confirmed.
Decree affirmed*